

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

September 13, 2023

**Via ECF**
The Honorable District Judge Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: **Garcia v. Il Postino, Inc., et al.**
   **23-CV-4053 (RA)(RWL)**

Dear Judge Abrams

Our office represents Julio Tellez Garcia ("Plaintiff") and we submit this motion jointly with counsel for Il Postino, Inc. and Luigi Russo (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached following a Court-annexed mediation held on August 21, 2023.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

I. **The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

   a. **The Settlement Amount**

The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, which are addressed below, for the global amount of $22,500.00.

   b. **Plaintiff's Position**

Plaintiff commenced this lawsuit alleging that he was not paid proper overtime rates of pay in violation of the Fair Labor Standards Act (FLSA) and New York Labor Laws (NYLL).

Plaintiff alleged that Defendants employed him as a cook at their restaurant, Il Postino, located at 133 East 61st Street, New York, New York 10065.

Although Plaintiff was employed by Defendants for various time periods, Plaintiff's claims in this action pertained to his employment by Defendants from in or around October 2022 until in or around January 2023. During this approximately four-month period, Plaintiff alleged he was improperly compensated on a flat salary basis despite the fact that he worked approximately sixty-three (63) hours per week. As such, Plaintiff alleged that he was not compensated for approximately twenty-three (23) hours of overtime per week during this period.

Based on the above, Plaintiff alleged he was owed approximately $25,000.00 in unpaid wages.

The parties had bona fide factual disputes over the number of days and hours worked by Plaintiff, which were discussed in detail at the parties' mediation. Although Plaintiff was confident that he could recover all alleged amounts owed, his preference was for a guaranteed outcome early in litigation that would allow him to recover a significant portion of his alleged unpaid wages rather than face the risks, time and expenses associated with continued litigation.

### c. Defendants' Position

It is Defendants' position that Plaintiff is not entitled to any unpaid wages.

With respect to the relevant period of employment, Plaintiff worked from the week ending November 13, 2022, until the week ending March 5, 2023 (i.e. 17 weeks).

Furthermore, Plaintiff did not work six (6) days per week every single week, nor did he work ten and a half (10.5) hours per day, necessitating further reductions of the damage computations. In their defense, Defendants are in possession of relevant records along with several eyewitnesses who worked directly with Plaintiff and are prepared to testify on Defendants' behalf.

With respect to the relevant period of his employment, Plaintiff asserts that he was (a) misclassified as an exempt employee, (b) paid a flat weekly salary, (c) worked sixty-three (63) hours per week, and (d) is also entitled to unpaid spread of hours premiums. Defendants refute these claims. In fact, Plaintiff claims to have worked the same number of hours during all periods of his employment. An analysis of Defendants' records from Plaintiff's first two (2) stints at the restaurant reveals that he worked an average of approximately forty-five (45) hours per week, accounting for lengthy breaks during which no work was performed (i.e. between 3 – 5 p.m. each day). However, upon his return to employment in 2022, Plaintiff worked a shorter schedule of no more than forty (40) hours in any given week, accounting for breaks. Therefore, Plaintiff is not entitled to any additional wages for that period.

Accordingly, there was a strong possibility that Plaintiff would have failed to meet his burden of proof to establish his claims had the litigation continued.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir.

2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $22,500.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. The parties had genuine, bona fide disputes over the days and hours worked by Plaintiff, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

## II.     **The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable**

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 2 of the Settlement Agreement is appropriately tailored to claims under the FLSA, NYLL and their associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants, and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III. <u>Distribution to Plaintiff and Requested Attorneys' Fees and Expenses</u>

#### a. Distribution to Plaintiff

The parties agreed to a global settlement of $22,500.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $14,544.00 after the requested attorneys' fees and expenses.

#### b. Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $685.00 for identifiable expenses, which include:

- the Southern District of New York filing fee in this matter: $402.00
- the costs of service and attempted service of the Summons and Complaint on all Defendants: $283.00

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($21,815.00), or $7,271.00 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $7,956.00.

As such, the settlement funds as broken down into its component parts is as follows:

**Settlement Amount:** $22,500.00
**Attorneys' Expenses:** $685.00
**Net Settlement Amount:** $21,815.00 ($22,500.00 - $685.00)
**Requested Attorneys' Fees:** $7,271.00 ($21,815.00 / 3)
**Total payable to Attorneys:** $7,956.00 ($7,271.00 + $685.00)
**Total payable to Plaintiff:** $14,544.00 ($22,500.00 - $7,956.00)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation and the recovery secured through their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

### IV. <u>Closing</u>

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel through the Court-annexed mediation program and complies with the

applicable case law under *Cheeks*. As such, we respectfully request that the Court approve the Settlement Agreement and dismiss the action. We thank the Court for its consideration and remain available to provide any additional information.

                                                                Respectfully submitted,

                                                                *James O'Donnell*
                                                                James O'Donnell, Esq.